## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| "D.B" by and through KURTIS B., as father and next friend, JENNIFER B. and KURTIS B., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO. 3:11-CV-773 |
| v. | ) | |
| | ) | |
| JAMES KOPP, JAN MORAVITS, LISA RINIKER, COUNTY OF GRANT, WISCONSIN, and GRANT COUNTY DEPARTMENT OF SOCIAL SERVICES, | ) ) ) ) | JUDGE BARBARA CRABB MAG. JUDGE STEPHEN CROCKER |
| | ) | |
| Defendants. | ) | |

## SEOND AMENDED COMPLAINT AT LAW

Plaintiffs, "D.B.," by and through KURTIS B., as father and next friend, JENNIFER B. and KURTIS B., by and through undersigned counsel, and for their Second Amended Complaint against the Defendants, JAMES KOPP, sued in his individual capacity (hereinafter "KOPP"), JAN MORAVITS, sued in her individual capacity (hereinafter "MORAVITS"), LISA RINIKER, sued in her individual capacity (hereinafter "RINIKER"), COUNTY OF GRANT, WISCONSIN (hereinafter "COUNTY"), and GRANT COUNTY DEPARTMENT OF SOCIAL SERVICES (hereinafter "DSS"), state as follows:

## NATURE OF COMPLAINT & SYNOPSIS

This action is brought pursuant to 42 U.S.C. § 1983, to redress the deprivation under color of law Plaintiffs' rights as secured by the Fourth, Eighth and Fourteenth Amendments of the United States Constitution.

In September, 2010, three children, namely D.B. and two other neighbor

children, each 5 years-old (brother & sister) were playing "doctor" at D.B.'s home while the neighbors were supposed to be supervising them.  The siblings are the children of a high-ranking local political figure.  As it turned out, this was apparently not the first time the three children had engaged in such activity, and all three were active participants.  This behavior, according to behavioral and psychological experts, is normal exploratory childhood behavior.

However, D.B. was investigated by KOPP, a now-former Deputy with the Grant County Sheriff's Department, and MORAVITS, who is employed by DSS.  MORAVITS's regional supervisor (Lori T.) is the political figure's wife's sister-in-law, and the siblings' aunt.

KOPP investigated D.B. with an eye towards making sure he was charged as severely as possible, while deliberately ignoring evidence that the siblings, the children of the political figure, engaged in the exact same conduct.  He sought out witnesses to trump up more charges, while ignoring contradictory evidence, all for the purpose of making sure six year old D.B. was placed into the court system.

After taking over the investigation from another DSS employee who was satisfied with D.B.'s behavior, pursuant to KURTIS B. and JENNIFER B. showing her medical and psychological records (and who was not going to refer D.B. into the court system), MORAVITS wrote a scathing report critical of D.B. calling for his prosecution (on any charges, so long as charges were brought), and assuring KURTIS B. and JENNIFER B. that in Grant County, Wisconsin, a six year-old is and was not immune to criminal prosecution.  But as to the children of the political

2

figure, MORAVITS did not call for the laying of charges against them.

All of this was done in coordination with RINIKER, whose communications with KOPP and MORAVITS were geared toward ensuring that D.B. was brought into the court system, while the political figure's children stayed out of it.

RINIKER, as Grant County District Attorney, charged six year old D.B. with "First Degree Sexual Assault," a Class B Felony. The political figure's children were not charged with anything or otherwise brought into the court system. Later, RINIKER also added on two counts of Disorderly Conduct, for alleged actions that occurred in D.B.'s own home with a babysitter the previous summer.

D.B.'s attorney sought to have all charges, especially the felony First Degree Sexual Assault charge dismissed because D.B. is only six years old, to which RINIKER responded to the court by writing: **"The legislature could have put an age restriction in the [sexual assault] statute if it wanted to. The legislature did no such thing."**

As a result of the investigation and publicity surrounding the occurrence, and the deprivation of D.B.'s civil rights that permeated this entire affair, D.B. suffered and continues to suffer greatly. He has since been diagnosed with various stress disorders, caused by the Defendants' actions, including pain and suffering, fear of incarceration, anxiety, depression, inability to sleep, vomiting, crying and missed school time. In short, the Defendants have directly caused the dramatic worsening of D.B.'s life.

## JURISDICTION AND VENUE

Jurisdiction of this Court arises under the Civil Rights Act, 42 U.S.C. §1983, the judicial code, 28 U.S.C. §§ 1331, 1337, and 1343(a); and the United States Constitution.  Pendent jurisdiction over state claims is had by 28 U.S.C. § 1367. Venue is founded in this judicial Court pursuant to 28 U.S.C. § 1391, as the acts complained of occurred in this District.

## PARTIES

### Plaintiffs

1.      Plaintiff D.B. is an eight year old minor, who as of September, 2010, had been diagnosed with hyperactivity.  He is represented by KURTIS B., his father and next friend.  KURTIS B. is married to JENNIFER B., who is D.B.'s mother. D.B. resides with KURTIS B. and JENNIFER B. in the City of Lancaster, Grant County, Wisconsin.

2.      At all relevant times, D.B. was a normal, if rambunctious, six year old child.  His sexual development was par for a six year old, which is to say he had no sexual inclinations or maturity, and may have even been a lower level than "normal" due to his hyperactivity.

3.      Plaintiff JENNIFER B. is the mother of D.B.  She is the wife of KURTIS B.  She is a resident of the City of Lancaster, Grant County, Wisconsin and was harmed by Defendants in Grant County, Wisconsin.

4.      Plaintiff KURTIS B. is the father of D.B. and the husband of JENNIFER B.  He is a resident of the City of Lancaster, Grant County, Wisconsin

and was harmed by Defendants in Grant County, Wisconsin.

5.     At all relevant times, JENNIFER B. and KURTIS B. were fit parents, representing the highest degree of parenting for their two children D.B. and his older brother B.B.

<u>Defendants</u>

6.     Defendant RINIKER is the Grant County District Attorney. Grant County is a municipality for purposes of this Complaint. At all relevant times, she acted under color of law and with the authority of her position.  She is sued in her individual capacity and for duties not within the scope of prosecutorial duties and those duties that are investigatory in nature.  Upon information and belief, RINIKER is a resident of Grant County, Wisconsin.  RINIKER harmed Plaintiffs in Grant County.

7.     Defendant MORAVITS is an employee of Grant County Social Services, Juvenile Court Intake.  At all relevant times, she acted under color of law and with the authority of her position.  She is sued in her individual capacity.  Upon information and belief, she is a resident of Grant County, Wisconsin.  MORAVITS harmed Plaintiffs in Grant County.

8.     Defendant KOPP was an investigator and sworn law enforcement officer for Grant County.  At all relevant times, he acted under color of law and with the authority of his position.  He is sued in his individual capacity.  Upon information and belief, he is a resident of Grant County, Wisconsin. KOPP harmed Plaintiffs in Grant County.

9.     COUNTY is a Wisconsin municipal corporation, duly incorporated under the laws of the State of Wisconsin, and was the employer and principal of RINIKER, MORAVITS and KOPP at all times relevant to this lawsuit.  Upon information and belief, COUNTY's principal headquarters is located at 111 South Jefferson Street, P.O. Box 529, Lancaster, Wisconsin 53813-0529.  The business of COUNTY is managed by the body known as the County Board of Supervisors. COUNTY's policies and practices, as carried out by the individual Defendants, harmed Plaintiffs in COUNTY.

10.     DSS is an agency/department of Grant County government, having been established pursuant to [Wis.] Chapter 46.23(3).  Based upon information and belief, DDS is located at 8820 HWY 35 and 61 S, P.O. Box 447 Lancaster, Wisconsin 53813.  DDS, though its policies and practices as carried out by the individual Defendants, harmed Plaintiffs in COUNTY.

## FACTS

11.     On September 12, 2010, D.B. was six years old.  That afternoon, two neighbor children, C.C. (age 5) and W.C. (age 5) were playing in D.B's backyard.

12.     C.C. and W.C. are the children of Stephen C., a high-ranking public employee in Lancaster, Wisconsin.  The children's aunt (their mother's sister-in-law), Lori T., is the Area Supervisor for Wisconsin Bureau of Regional Operations, and, as such, is a high-ranking State official who oversees DSS and, by extension, its employees.

13.     D.B. had recently undergone extensive medical testing for digestive and related issues in a hospital in Iowa.  These tests involved, among other things, enemas and other examinations involving his rectal area.

14.     The afternoon of September 12, 2010, the three children began playing "butt doctor."  For D.B., this had a specific meaning.  According to C.C., D.B. placed his finger on her bare buttock.  At that moment, the children's mother, Kelli C., came into the backyard, interpreted what she saw as D.B. inserting his finger into C.C.'s anus.  She told her sister-in-law Lori T., who contacted MORAVITS, an Intake Coordinator at DSS.  MORAVITS contacted the Lancaster Police Department to investigate D.B.

15.     The Lancaster Police Department declined jurisdiction, since there would appear to be a conflict of interest given Steven C.'s position.  The Grant County Sheriff's Department, specifically KOPP, decided to take the case on September 16, 2010.

16.     KOPP's investigation, like the investigation by MORAVITS, lacked due diligence, was haphazard, was biased in favor of the father Stephen C. because of the father's political status; and the investigations were done with intent to interfere with rights and guarantees afforded to Plaintiffs by the United States Constitution.

17.     KOPP did not act reasonably in conducting the investigation.

18.     KOPP waged a relentless campaign to discredit and embarrass and humiliate six year-old D.B.  KOPP, under color of law, was successful in causing

7

D.B. and his family a public negative stigma that will never cease to exist so long as the B. family resides in the area.  KOPP has since retired from Grant County government.

19.     On September 22, 2010, ten days after the alleged incident, KOPP interviewed C.C. and W.C. separately with an employee of DSS.  During these interviews, besides giving "information" contradictory to each other, both W.C. and C.C. told how they touched D.B. in the same manner for which D.B. was being investigated.  These incidents took place over a period of time, and were mixed in with usual children's activities, such as playing with toys.

20.     JENNIFER B. told KOPP the "playing doctor" took place among all the kids.  These same facts were told to MORAVITS, as well as how W.C. had inappropriately touched D.B.

21.     KOPP was biased and retaliatory against the B. family for retaining counsel, telling them D.B. must be guilty if KURTIS B. and JENNIFER B. hired an attorney.

22.     On or about October 7, 2010, KOPP referred two counts of First Degree Sexual Assault to MORAVITS.

23.     On October 25, 2010, KURTIS B. and JENNIFER B. attended a meeting at DSS with MORAVITS.  An attorney they retained for D.B.'s benefit was also in attendance.  JENNIFER B. and KURTIS B. reiterated how the kids were all playing and about W.C.'s actions.

24. At all relevant times, MORAVITS was acting with an obvious conflict of interest, given how her own boss at DSS had to report to Thuli higher up the chain of command.

25. Rather than address these issues, and rather than recuse herself and DSS due to said obvious conflict of interest, MORAVITS told the trio that if D.B. was not there to admit his crime there was no reason to have this meeting. MORAVITS did not review D.B.'s rights at all with them. MORAVITS said that if D.B. was there she would read him his rights and ask him to admit his crime. MORAVITS never offered any type of deferred agreement to keep D.B. out of the court system. KURTIS B. and JENNIFER B. gave MORAVITS reports from D.B.'s medical doctor, daycare provider, and therapist, which MORAVITS disregarded. MORAVITS then asked the couple to go home and rethink about bringing D.B. in to her to admit his crimes.

26. Further, MORAVITS had deliberately taken over the investigation from another DSS employee who was satisfied with D.B.'s behavior, pursuant to KURTIS B. and JENNIFER B. showing her medical and psychological records, and an investigation into the B. home with exemplary results. The other DSS employee was not going to refer D.B. into the court system.

27. MORAVITS and KOPP also disregarded multiple reports by the family that C.C.'s and W.C.'s parents had harassed the family, included multiple incidents of verbal and physical abuse by the C.'s against D.B., and of Kelli C. physically assaulting and humiliating the family's older child, B.B.

9

28.     During the investigation process, KOPP and MORAVITS were in communication with each other, for the purpose of ensuring D.B. was brought up on criminal charges, and to make sure that W.C. and C.C. were not.

29.     During the investigation process, KOPP and MORAVITS were also in communication with RINIKER, who advised them on how to proceed against D.B. Plaintiffs of course do not know the exact contents of those communications at this point in time.

30.     KOPP also ignored documentary evidence that pointed to the activity being conducted by all the children, for the purpose of prosecuting only D.B., and not C.C or W.C., whose father was a political figure in the area.

31.     Following the October 25, 2010 meeting, and upon hearing that the family did not want to admit D.B.'s guilt, and that his parents hired an attorney, MORAVITS referred First Degree Sexual Assault charges against D.B. to RINIKER on November 2, 2010.

32.     RINIKER filed First Degree Sexual Assault charges against D.B. on November 12, 2010.

33.     KOPP then sought out additional "witnesses," and came up with a former babysitter, who told a story of D.B. making sexual contact with her during her three months of babysitting.  KOPP deliberately cherry-picked the language that enabled him to refer criminal charges against D.B., while unreasonably ignoring contradictory testimony and evidence that the behavior was innocent

and/or did not occur.  The babysitter also babysat for the C. family, and is the daughter of a City of Lancaster police officer.

34.     Based on this, KOPP referred to MORAVITS that D.B. be charged with two additional counts of Fourth Degree Sexual Assault.  KOPP notified RINIKER he was doing this.  On November 18, 2010, MORAVITS referred charges of Second Degree Sexual Assault and Fourth Degree Sexual Assault to RINIKER.

35.     RINIKER filed two Disorderly Conduct charges against D.B. on December 6, 2010, despite the presumed knowledge that Wisconsin law requires a real possibility that this disturbance or disruption will spill over and disrupt the peace, order or safety of the surrounding community as well, and that nothing of the sort happened in this case.

36.     On or about July 19, 2011, KOPP unreasonably and without a warrant contacted D.B.'s school, informing the principal that there was a police investigation of D.B. and seeking information about him.  KOPP also actually went to the school to obtain information about D.B.  Even if the investigation of D.B. had been valid, this search served no investigative purpose except to harass D.B. and ostracize him at his school.

37.     KOPP and MORAVITS never referred C.C. or W.C. for any charges or entry into the court system, even though they had mentioned engaging in the same behavior with D.B., for the purpose of prosecuting only D.B., and not C.C or W.C., whose father was a political figure in the area.

11

38.     On July 22, 2011, while this case was pending in the court system, MORAVITS treated D.B. like a sexual predator, and made an effort to have D.B. register as such when he turns eighteen, ignoring multiple medical and psychological reports about D.B. to the contrary.  MORAVITS also threatened KURTIS B. and JENNIFER B. to have their children removed if they did not give in to her demands.

39.     During the court proceedings, RINIKER took actions adverse to, and negatively impacting, D.B. that were not motivated by the prosecution of D.B., nor were they connected to the prosecution of D.B., but instead were motivated by RINIKER's defense of the instant suit.

40.     After more than a year in the court system, the cases against D.B. were ended in December, 2011, when a consent decree KURTIS B. and JENNIFER B. had to enter into on D.B.'s behalf finally expired.

41.     As a result of the concerted efforts by RINIKER, KOPP and MORAVITS to persecute D.B., which were to "avenge" the children of Stephen C., and/or to cover up the like actions committed by the children of Stephen C., and/or to appease Lori T., and/or committed for other improper reasons, D.B. suffered extreme emotional and physical distress, and was socially ostracized, as a result of the deprivation of his civil rights.  The B. family, including JENNIFER B. and KURTIS B., also suffered extreme emotional distress and financial loss, as a result of the deprivation of D.B.'s civil rights by the Defendants.

12

## COUNT I – DEPRIVATION OF EQUAL PROTECTION OF THE LAWS
## (MORAVITS, KOPP, & RINIKER) - U.S. CONST. AMEND. XIV; 42 U.S.C. § 1983

42.     Plaintiffs reallege and reassert the allegations of Paragraphs 1-41, inclusive, of this Complaint as if fully restated herein.

43.     By applying the laws in such a way that D.B. was forced into the COUNTY court system, while W.C. and C.C. were not brought into the court system for committing the same acts, D.B. was denied equal protection of the laws.

44.     By applying the laws in such a way that D.B. was forced into the COUNTY court system, while W.C. and C.C., the children of a high ranking City of Lancaster employee, were not brought into the court system, D.B. was denied equal protection of the laws.

45.     Defendants, in violation of 42 U.S.C. 1983, under color of law, intended to, and did, deprive all Plaintiffs of their Fourteenth Amendment right to the equal protection of the law.  There was no exigent circumstance necessitating a departure from constitutional requirements.  MORAVITS, KOPP and RINIKER's actions were vindictive, they acted with malice and ill will towards D.B., and their conduct was unreasonable.

46.     The right to equal protection of the law is clearly established, and RINIKER, MORAVITS and KOPP acted unreasonably in denying that right to D.B.

47.     As a proximate result of KOPP's, MORAVITS' and RINIKER's actions, Plaintiffs suffered harm including mental stress, pain and suffering, loss of school time for D.B., significant financial losses, attorney's fees, humiliation and embarrassment.

WHEREFORE, the Plaintiffs, D.B., by and through KURTIS B., as father and next friend, JENNIFER B. and KURTIS B., request this Honorable Court enter judgment in their favor and against the Defendants, JAMES KOPP, JAN MORAVITS and LISA RINIKER, jointly and severally, in an amount equaling or exceeding Two Million Dollars ($2,000.000.00) and further demands judgment against each of said defendants, jointly and severally, for punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00), plus the costs of this action, including attorney's fees pursuant to 42 U.S.C. § 1988, and such other relief deemed to be just and equitable.

## COUNT II - DEPRIVATION OF PROCEDURAL DUE PROCESS (MORAVITS, KOPP &  RINIKER) - U.S. CONST. AMEND. XIV; 42 U.S.C. § 1983

48.     Plaintiffs reallege and reassert the allegations of Paragraphs 1-41, inclusive, of this Complaint as if fully restated herein.

49.     The Defendants' actions was for the purpose of depriving D.B. of his liberty interests, by being forced into the court system, by being forced into multiple avenues of therapy and by being directly threatened with arrest and jail if he did not come to court, even though he was only six years old, even though he was supposed to be in school, and even though all communications should have been sent to his parents and/or attorney.

50.     D.B. had no remedy, for the Defendants' "investigations" and actions were designed to ensure that D.B. not only was funneled into the court system, but that he be punished for actions that (A.) were normal childhood behaviors, and (B.)

were also committed by the political figure's children, though they were not so prosecuted or punished.

51.     MORAVITS also violated D.B.'s procedural due process by conducting the "investigation" of D.B., as she should have recused herself in favor of a neutral party based on the obvious conflict of interest.

52.     The Defendants' intentional or deliberately indifferent actions, as described in the paragraphs above, which were done to wield the power of the State to punish a six year old boy and to appease certain political figures, shock the conscience of a reasonable person, and show a deliberate intent to deprive D.B. of his procedural due process rights.

53.     In the alternative, the Defendants' intentional or deliberately indifferent actions, as described in the paragraphs above, which were done to wield the power of the State to punish a six year old boy, and to appease certain political figures, shock the conscience of a reasonable person, and showed a deliberate indifference to D.B.'s procedural due process rights.

54.     D.B.'s procedural due process rights were clearly established, and the Defendants acted intentionally and unreasonably in depriving D.B. of them.

55.     There were no emergencies or other circumstances that would justify an exception from affording D.B. his procedural due process rights.

56.     All named Defendants harmed Plaintiffs, and that harm includes mental stress, pain and suffering; loss of school time for D.B.; significant financial losses; attorney's fees; humiliation and embarrassment.

15

57.    Plaintiffs' injuries were proximately caused by Defendants.

WHEREFORE, the Plaintiffs, D.B., by and through KURTIS B., as father and next friend, JENNIFER B. and KURTIS B., request this Honorable Court enter judgment in their favor and against the Defendants, JAMES KOPP, JAN MORAVITS and LISA RINIKER, jointly and severally, in an amount equaling or exceeding Two Million Dollars ($2,000.000.00) and further demands judgment against each of said defendants, jointly and severally, for punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00), plus the costs of this action, including attorney's fees pursuant to 42 U.S.C. § 1988, and such other relief deemed to be just and equitable.

## COUNT III – DEPRIVATION OF SUBSTANTIVE DUE PROCESS (MORAVITS, KOPP &  RINIKER) - U.S. CONT. AMEND. XIV; 42 U.S.C. § 1983

58.    Plaintiffs reallege and reassert the allegations of Paragraphs 1-41, inclusive, of this Complaint as if fully restated herein.

59.    Through the Defendants' intentional and malicious actions, D.B. was deprived of his Fourteenth amendment substantive rights of personal integrity and being free from unnecessary pain and suffering without due process, in that the conclusion of the "investigation" and prosecution was foregone, since the intent was to punish D.B. and not the other siblings, and to appease certain political figures.

60.    In the alternative, through the Defendants' deliberate indifference to D.B., he was deprived of his Fourteenth Amendment substantive rights of personal integrity and being free from unnecessary pain and suffering without due process,

16

in that the conclusion of the "investigation" and prosecution was foregone, since the intent was to punish D.B. and not the other siblings, and to appease certain political figures.

61.     Also, through the Defendant's intentional or deliberately indifferent actions towards KURTIS B. and JENNIFER B., their fundamental Fourteenth Amendment rights to raise, and discipline, and discuss sensitive issues of boundaries and personal space and appropriate "sexual" behavior with D.B., suffered unjust interference without due process.

62.     The Defendants' intentional or deliberately indifferent actions, which were done to wield the power of the State to punish a six year old boy, and to appease certain political figures, shock the conscience of a reasonable person.

63.     The Plaintiffs' rights were clearly established, and the Defendants acted unreasonably in their intentional or deliberately indifferent efforts to deprive the Plaintiffs of said fundamental Fourteenth Amendment rights.

64.     All named Defendants harmed Plaintiffs, and that harm includes mental stress, pain and suffering; loss of school time for "D.B."; significant financial losses; attorney's fees; humiliation and embarrassment.

65.     Plaintiffs' injuries were proximately caused by Defendants.

WHEREFORE, the Plaintiffs, D.B., by and through KURTIS B., as father and next friend, JENNIFER B. and KURTIS B., request this Honorable Court enter judgment in their favor and against the Defendants, JAMES KOPP, JAN MORAVITS and LISA RINIKER, jointly and severally, in an amount equaling or

17

exceeding Two Million Dollars ($2,000.000.00) and further demands judgment against each of said defendants, jointly and severally, for punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00), plus the costs of this action, including attorney's fees pursuant to 42 U.S.C. § 1988, and such other relief deemed to be just and equitable.

## COUNT IV – UNLAWFUL SEIZURE AND MALICIOUS PROSECUTION (KOPP, MORAVITS, RINIKER) - U.S. CONST. AMENDS. IV, XIV; 42 U.S.C. § 1983

66.     Plaintiffs reallege and reassert the allegations of Paragraphs 1-41, inclusive, of this Complaint as if fully restated herein.

67.     D.B. was seized in the meaning of the Fourth Amendment by both a criminal and judicial process launched by all Defendants.

68.     D.B. was also maliciously prosecuted by the Defendants, in that there was an intention to singularly investigate and prosecute D.B. for non-criminal acts, while not doing the same to the political figure's children who committed the same acts.

69.     D.B. had a clearly established right to not be unreasonably thrust into the court system, and the Defendants RINIKER, KOPP and MORAVITS in concert unreasonably denied D.B. that right.

70.     These actions by the Defendants shock the conscience of the reasonable person.

71.     D.B. was harmed by the forced submission to authority for the purpose of answering to outrageous and unreasonable felony charges against him.

18

72.     D.B. was harmed by the unreasonable and biased "investigation" of him, in which a six year old boy was thrust into the court system for political appeasement, and where evidence in his favor was disregarded and evidence allegedly against him was given undue weight, while similar evidence against politically-connected children was ignored.

73.     All Defendants were and are the proximate cause of D.B.'s harm.


WHEREFORE, the Plaintiffs, D.B., by and through KURTIS B., as father and next friend, JENNIFER B. and KURTIS B., request this Honorable Court enter judgment in their favor and against the Defendants, JAMES KOPP, JAN MORAVITS and LISA RINIKER, jointly and severally, in an amount equaling or exceeding Two Million Dollars ($2,000.000.00) and further demands judgment against each of said defendants, jointly and severally, for punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00), plus the costs of this action, including attorney's fees pursuant to 42 U.S.C. § 1988, and such other relief deemed to be just and equitable.

### COUNT V – CRUEL AND UNUSUAL PUNISHMENT
### U.S. CONST. AMENDS. VIII, XIV; 42 U.S.C. § 1983

74.     Plaintiffs reallege and reassert the allegations of Paragraphs 1-41, inclusive, of this Complaint as if fully restated herein.

75.     The prosecution, consent decree and forced therapy imposed on a six year old for conducting normal childlike behavior, especially when the politically-connected children who committed the same acts were not punished at all, was

cruel and unusual in violation of D.B.'s Eighth Amendment rights in that the punishment:

- was degrading to D.B.'s dignity;
- was obviously inflicted on D.B. in a wholly arbitrary fashion;
- has been clearly and totally rejected throughout society; and
- was patently unnecessary.

76.   Defendants knew the prosecution would cause mental and physical anguish to D.B., and yet proceeded with deliberate indifference to D.B.'s health and well-being.

77.   D.B.'s rights were clearly established, and the Defendants acted unreasonably in their intentional or deliberately indifferent efforts to deprive D.B. of said fundamental Eighth Amendment rights.

78.   The Defendants proximately harmed D.B., and that harm included/includes: Pain and Suffering; Anxiety; Depression; Fear of being placed in jail; Sleepless Nights; Upset Stomach; Diarrhea; significant Loss of weight; Vomiting; Crying; missed school time; humiliation; and embarrassment.


WHEREFORE, the Plaintiffs, D.B., by and through KURTIS B., as father and next friend, JENNIFER B. and KURTIS B., request this Honorable Court enter judgment in their favor and against the Defendants, JAMES KOPP, JAN MORAVITS and LISA RINIKER, jointly and severally, in an amount equaling or exceeding Two Million Dollars ($2,000.000.00) and further demands judgment against each of said defendants, jointly and severally, for punitive damages in the

amount of Five Hundred Thousand Dollars ($500,000.00), plus the costs of this action, including attorney's fees pursuant to 42 U.S.C. § 1988, and such other relief deemed to be just and equitable.

## COUNT VI – VIOLATION OF CIVIL RIGHTS PURSUANT TO POLICY OR CUSTOM (*MONELL* CLAIM; 42 U.S.C. § 1983) (DSS)

79.     Plaintiffs reallege and reassert the allegations of Paragraphs 1-41, inclusive, of this Complaint as if fully restated herein.

80.     MORAVITS's violations of D.B.'s constitutional rights were a result of DSS's express policies that, when enforced, cause a deprivation of constitutional rights.

81.     In the alternative, MORAVITS's violations of D.B.'s constitutional rights were a result of DSS having a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law.

82.     Namely, D.B.'s constitutional injuries were proximately caused by DSS's failure to properly train, supervise and control its agents and/or employees on the proper way to conduct themselves towards citizens in the situation pled above.

83.     As a matter of both policy and practice, DSS facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading the DSS agents and/or employees to believe their actions will not be scrutinized; and, in that way, directly encourages future abuses such as those affecting D.B.

21

84.     DSS has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

85.     In the alternative, D.B.'s constitutional injury was caused by DSS, which had final policymaking authority over its agents and/or employees' official actions.

86.     DSS harmed D.B. and that harm included/includes: Pain and Suffering; Anxiety; Depression; Fear of being placed in jail; Sleepless Nights; Upset Stomach; Diarrhea; significant Loss of weight; Vomiting; Crying; missed school time; humiliation; and embarrassment.

87.     DSS harmed KURTIS B. and JENNIFER B. and that harm included/includes mental stress, pain and suffering; loss of school time for D.B.; significant financial losses; attorney's fees; humiliation; and embarrassment.

88.     DSS was and is the proximate cause of D.B.'s harm.


WHEREFORE, the Plaintiffs, D.B., by and through KURTIS B., as father and next friend, JENNIFER B. and KURTIS B., request this Honorable Court enter judgment in their favor and against the Defendant, GRANT COUNTY DEPARTMENT OF SOCIAL SERVICES, in an amount equaling or exceeding Two Million Dollars ($2,000.000.00) and further demands judgment against this Defendant for punitive damages in the amount of Five Hundred Thousand Dollars

($500,000.00), plus the costs of this action, including attorney's fees pursuant to 42

U.S.C. § 1988, and such other relief deemed to be just and equitable.

## COUNT VII – VIOLATION OF CIVIL RIGHTS PURSUANT TO POLICY OR CUSTOM (*MONELL* CLAIM; 42 U.S.C. § 1983) (COUNTY)

89.     Plaintiffs reallege and reassert the allegations of Paragraphs 1-41,

inclusive, of this Complaint as if fully restated herein.

90.     KOPP's violations of D.B.'s constitutional rights were a result of

COUNTY'S express policies that, when enforced, cause a deprivation of

constitutional rights.

91.     In the alternative, KOPP'S violations of D.B.'s constitutional rights

were a result of COUNTY having a widespread practice that, although not

authorized by written law or express municipal policy, is so permanent and well

settled as to constitute a custom or usage within the force of law.

92.     Namely, D.B.'s constitutional injuries were proximately caused by

COUNTY's failure to properly train, supervise and control its agents and/or

employees on the proper way to conduct themselves towards citizens in the

situation pled above.

93.     As a matter of both policy and practice, COUNTY facilitates the type of

misconduct at issue here by failing to adequately punish and discipline prior

instances of similar misconduct, thereby leading the COUNTY agents and/or

employees to believe their actions will not be scrutinized; and, in that way, directly

encourages future abuses such as those affecting D.B.

23

94.     COUNTY has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

95.     In the alternative, D.B.'s constitutional injury was caused by COUNTY, which had final policymaking authority over its agents and/or employees' official actions.

96.     COUNTY harmed D.B. and that harm included/includes: Pain and Suffering; Anxiety; Depression; Fear of being placed in jail; Sleepless Nights; Upset Stomach; Diarrhea; significant Loss of weight; Vomiting; Crying; missed school time; humiliation; and embarrassment.

97.     COUNTY harmed KURTIS B. and JENNIFER B., and that harm included/includes mental stress, pain and suffering; loss of school time for D.B., significant financial losses; attorney's fees; humiliation; and embarrassment.

98.     COUNTY was and is the proximate cause of D.B.'s harm.


WHEREFORE, the Plaintiffs, D.B., by and through KURTIS B., as father and next friend, JENNIFER B. and KURTIS B., request this Honorable Court enter judgment in their favor and against the Defendant, COUNTY OF GRANT, WISCONSIN, in an amount equaling or exceeding Two Million Dollars ($2,000.000.00) and further demands judgment against this Defendant for punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00), plus the

costs of this action, including attorney's fees pursuant to 42 U.S.C. § 1988, and such other relief deemed to be just and equitable.

## COUNT VIII – WISCONSIN STATE COMMON LAW ABUSE OF PROCESS (MORAVITS, KOPP, &  RINIKER)

99.     Plaintiffs reallege and reassert the allegations of Paragraphs 1-41 of this Complaint as if fully restated herein.

100.   KOPP and RINIKER maliciously, willfully and intentionally used the investigative law enforcement process for an improper purpose, namely to wield the power of the State to punish a six year old boy, and to appease certain political figures.

101.   KOPP and RINIKER subsequently abused the investigative law enforcement process maliciously, willfully and intentionally by using it against D.B. in a manner for which it was not designed, to wit, wielding the power of the State to punish a six year old boy, and to appease certain political figures, while steering the investigation in a direction that ignores the simultaneous actions of the relatives of those political figures.

102.   KOPP and MORAVITS maliciously, willfully and intentionally used the investigative social services process of DSS for an improper purpose, namely to wield the power of the State to punish a six year old boy, and to appease certain political figures.

103.   KOPP and MORAVITS subsequently abused the investigative social services process of DSS maliciously, willfully and intentionally by using it against D.B. in a manner for which it was not designed, to wit, wielding the power of the

State to punish a six year old boy, and to appease certain political figures, while steering the investigation in a direction that ignores the simultaneous actions of the relatives of those political figures.

104.   The named Defendants acted unreasonably and intentionally to the Plaintiffs' clearly established constitutional rights.

105.   All named Defendants committed these wrongful actions in the exercise of their professional discretion, in that they had all been specially trained to act properly and according to the law in their investigatory actions.

106.   All named Defendants intentionally and maliciously harmed Plaintiffs, and that harm includes mental stress, pain and suffering; loss of school time for D.B.; significant financial losses; attorney's fees; humiliation and embarrassment.

107.   Plaintiffs' injuries were proximately caused by Defendants.

WHEREFORE, the Plaintiffs, D.B., by and through KURTIS B., as father and next friend, JENNIFER B. and KURTIS B., request this Honorable Court enter judgment in their favor and against the Defendants, JAMES KOPP, JAN MORAVITS and LISA RINIKER, jointly and severally, in an amount equaling or exceeding Two Million Dollars ($2,000.000.00) and further demands judgment against each of said defendants, jointly and severally, for punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00), plus the costs of this action, and such other relief deemed to be just and equitable.

## COUNT IX – WISCONSIN STATE COMMON LAW INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL STRESS (MORAVITS, KOPP, & RINIKER)

108.    Plaintiffs reallege and reassert the allegations of Paragraphs 1-41 of this Complaint as if fully restated herein.

109.    The named Defendants' actions were malicious, willful and intentional when they criminally pursued a disabled six year-old as if he were adult with full faculties, while violating his civil rights as detailed in Counts I though VII, above.

110.    The named Defendants' wrongful actions were all the result of professional discretion, as all were specially trained to act properly and according to the law in their investigatory actions.

111.    The Defendants' behavior was outrageous and shocks the conscience.

112.    The Defendants' actions were malicious, willful and intentional as to the foreseeable psychological damage they were causing D.B.

113.    Because of the named Defendants' actions, D.B. has suffered severe emotional stress and trauma and continues to suffer such conditions.

114.    Defendants knew that their actions would cause mental stress and/or they knew that there was a substantial certainty that their actions would cause D.B. severe psychological trauma.

115.    The Defendants' outrageous actions proximately caused D.B.'s severe emotional distress and other harm.

116.    The harm to D.B. includes pain and suffering, anxiety, depression, fear of being put in jail, sleeplessness, vomiting, crying, missed school time, humiliation,

27

and embarrassment, requiring medical care for the trauma caused by the Defendants.

WHEREFORE, the Plaintiffs, D.B., by and through KURTIS B., as father and next friend, JENNIFER B. and KURTIS B., request this Honorable Court enter judgment in their favor and against the Defendants, JAMES KOPP, JAN MORAVITS and LISA RINIKER, jointly and severally, in an amount equaling or exceeding Two Million Dollars ($2,000.000.00) and further demands judgment against each of said defendants, jointly and severally, for punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00), plus the costs of this action, and such other relief deemed to be just and equitable.

**PLAINTIFFS DEMAND TRIAL BY JURY PURSUANT TO F.R.CIV.P. 38(b).**

Dated:  May 2, 2012                   By: _____ /s/ David G. Sigale _____
                                            One of the Attorneys for Plaintiffs

Christopher Cooper, Esq.
LAW OFFICE OF CHRISTOPHER COOPER, INC.
500 N. Michigan Avenue, Suite 1514
Chicago, IL 60611
*or*
3620 W. 80th Lane
Merrillville, IN 46410

T: 312 371 6752 or 219 228 4396
F: 866 334 7458
cooperlaw3234@gmail.com

David G. Sigale, Esq. (Atty. ID# 6238103 (IL))
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137
630.452.4547 Tel.
630.596.4445 Fax
dsigale@sigalelaw.com

    Plaintiffs, by their signatures below, swear that they have read the foregoing
Second Amended Complaint; have understood it to the best of their ability. They
state that they are not lawyers. They agree, under penalty of law pursuant to
F.R.Civ.P. 11, that based on their understanding of the Second Amended
Complaint, the contents are truthful, accurate and are based on their best
recollection of the events described.

Plaintiffs' Signature:        /s/ Jennifer B.

                              /s/ Kurtis B.

Date: May 2, 2012